**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
**The Honorable Michael E. Romero**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 08-25408 MER |
| JOHN WILLIAM BERKEY | ) | |
| LYNDIA LANELL BERKEY | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| BESTWAY CONCRETE COMPANY | ) | Adversary No. 08-1919 MER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN WILLIAM BERKEY | ) | |
| | ) | Signed/Docketed |
| Defendant. | ) | August 18, 2011 |

**ORDER**

THIS MATTER comes before the Court on the following:

• *Defendant's Dispositive Motion A: Bestway Claimed Damages on 10 Invoices That Have No Addresses and Defendant Received No Trust Fund Payments* (Docket No. 115) ("Motion A").

• *Defendant's Dispositive Motion B: Defendant Did Refund the Trust Funds Claimed by the Plaintiff in Regards to the Oakwood Homes 12 Joint Checks Thereby Eliminating Defendant's Responsibility to Plaintiff Under Colorado Trust Fund Statutes* (Docket No. 116) ("Motion B").

• *Defendant's Dispositive Motion C: Plaintiff Claimed Damages on Two Properties That Defendant Did Not Collect Trust Funds From the Builder* (Docket No. 117) ("Motion C").

• *Defendant's Dispositive Motion D: Bestway Concrete Signed Eleven (11) Oakwood Homes Joint Checks and Bestway Was Complicit in the Use of Funds* (Docket No. 118) ("Motion D").

• *Defendant's Dispositive Motion E: Bestway Was Paid by Builders and Released Liens for $112,954.28 of Invoices Bestway Now Claims as Due from Defendant Under the Colorado Mechanic Lien Trust Fund Statutes* (Docket No. 119) ("Motion E").

- *Defendant's Request Court's Leave to File an "Amended" Dispositive Motion A: Bestway Claimed Damages on 8 Invoices (Not 10 Invoices Previously Stated) that Have No Addresses and Defendant Received No Trust Fund Payments* (Docket No. 126) ("Amended Motion A").

- *Plaintiff Bestway's Response in Opposition to Defendant's Dispositive Motions A, B, C, D, and E* (Docket No. 128) ("Response").

- *Defendant's Motion for the Court's Leave for Defendant to File Response to Plaintiff's Response to Defendant's Dispositive Motions A, B, C, D, and E* (Docket No. 130) ("Reply").

The Court hereby grants Defendant's motion for leave to file his Reply (Docket No. 130) and has considered that Reply as well as the other pleadings. Having reviewed the pleadings and the file and considered the legal arguments advanced by the parties, the Court makes the following findings of fact and conclusions of law.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 (a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), as it involves the determination of the dischargeability of a particular debt.

## BACKGROUND FACTS

The Complaint filed by Bestway Concrete Company ("Bestway") alleges it supplied concrete to one or more of Defendant John Berkey's ("Berkey") companies on several residential and commercial real estate projects. Berkey is the managing member and majority owner of Tech Companies, LLC ("Tech Companies"), which operated several entities, including Tech Foundations, LLC ("Tech Foundations"). The Complaint states Tech Foundations received payment of $655,143 from the developers of properties for which Bestway supplied materials but for which Bestway did not receive payment. Bestway alleges the funds were trust funds under the Colorado Trust Fund Statute ("TFS"),[1] and asserts Berkey, who is an individual member of Tech Foundations, is personally liable for the funds.

In addition, the Complaint alleges certain payments for materials were made by joint checks to Tech Foundations and Bestway in the amount of $184,716. According to the Complaint, Berkey forged a signature from Bestway and deposited the checks. Bestway

---

[1] COLO. REV. STAT. § 38-22-127.

contends the deposit of the checks with the forged signatures constitutes theft under the Colorado Theft Statute ("Theft Statute").[2]

The Complaint contains three claims for relief:  (1) for nondischargeability of the $655,143 under 11 U.S.C. § 523(a)(4),[3] pursuant to the TFS and for nondischargeability of treble damages under the Theft Statute; (2) for nondischargeability of the $184,716 under § 523(a)(4) under the TFS and for nondischargeability of treble damages under the Theft Statute; and (3) for nondischargeability of the $184,716 under § 523(a)(2)(A).

Berkey's Answer denies the TFS allegations, the Theft Statute allegations, and the fraud allegations.  The Answer raises the following affirmative defenses: (1) failure to state a claim; (2) statute of limitations; (3) waiver, estoppel, or laches; and  (4) damages are not authorized by law.  On November 18, 2009, Berkey was given leave to amend his Answer to add ten defenses, all of which asserted fraud or unclean hands on the part of Bestway.  In addition, Mrs. Berkey was dismissed as a party defendant.

On December 12, 2010, this Court entered an Order denying Bestway's and Berkey's Cross-Motions for Summary Judgment, and denying Berkey's First and Second Dispositive Motions.[4]  Thereafter, Berkey filed the pending Motions.

## DISCUSSION

### Motion A and Amended Motion A

The Court's file contains only the first page of Motion A, the certificate of mailing, and a summary labeled "Schedule A–Bestway Unpaid Invoices With No Addresses."  However, on the first page of Motion A, Berkey states Bestway has submitted ten invoices, totaling $19,828.32.  It also states no addresses were provided with these invoices, and Berkey has no record of addresses for the invoices, nor does he have a record of receiving payments from any builder for the invoices.  Exhibit A does not indicate to whom the invoices were submitted, but appears to be simply a summary of those invoices.

Bestway's response to Motion A notes Berkey claims the following invoices have no addresses:  Bestway Invoice Nos. 265619, 266037, 266438, 266439, 26941, 270118, 271409, 272116, 272934, and  273785.  Bestway submits, as its Exhibit 1, copies of Invoice Nos. 265619, 266037, 266438, 266439, 26941, 270118, 271409, 272116, 272934, 273785, pointing out each invoice has a "ship to" address on its face.

---

[2] COLO. REV. STAT. § 18-4-405.

[3] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[4] Docket No. 102.

Bestway recognizes cement pumpers may arrive at a central location at a building site, and be directed to a different lot in the site. However, Bestway asserts if it was not paid for the concrete delivery, it could file a lien against the property to which the concrete was supplied, and maintains the property addresses do not need to be listed on each invoice. In addition, Bestway argues even if Tech Foundations knew the property developer would not pay it specifically for the concrete delivered pursuant to the invoices, it also should have known payments it received from the developer were intended to cover Tech Foundations' standard costs, including concrete delivery, which costs would have been included in project bids by Tech Foundations. Bestway contends since Tech Foundations admitted it was paid on the subject contracts, it must have been paid with trust funds, and if Tech Foundations did not pay Bestway, it violated the TFS, as suppliers should have been paid in full before Tech Foundations used funds from the payments for its own purposes.

Regarding Bestway's response to Motion A, Berkey concedes he mistakenly referred to invoices without an address when he really meant to refer to invoices for a property with an unknown owner. Berkey agrees the invoices contain addresses, but asserts no trust fund monies were received for the invoices. He disputes Bestway's assertion he previously stated Tech Foundations was paid in full for its contracts with various developers. Rather, he contends Tech Foundations has written off a large portion of what it was owed from builders. He reiterates his argument the TFS does not require all funds on all projects must be used to pay trust fund vendors on all projects before funds can be used for other purposes, arguing each project must be accounted for separately.

Amended Motion A seeks to correct Berkey's assertion Bestway submitted ten invoices, totaling $19,828.32, for which no addresses were provided, and for which Berkey does not have records indicating payments from builders. According to Amended Motion A, the actual number of the subject invoices is eight, totaling $18,712.88. Bestway has not responded specifically to Amended Motion A, but presumably would raise the same arguments as to Berkey's assertions regarding the invoices as it raised in response to Motion A.

Under the TFS, the duty to account for the funds paid to a contractor or subcontractor, and to assign those funds by project, rests on the contractor or subcontractor to whom payments are made (in this case, Tech Foundations).[5] Moreover, Berkey's Reply demonstrates the existence of genuine issues of material fact. First, he admits the subject invoices contained

---

[5] *See In ASCI Redi-Mix v. Gamboa (In re Gamboa)*, 400 B.R. 784, 789-790 (Bankr. D. Colo. 2008), and cases cited therein. The *Gamboa* Court noted COLO. REV. STAT. 38-22-127(4) imposes the duty on the contractor to account for the funds. While the *Gamboa* court goes on to point out a plaintiff must go forward at trial with evidence to show it had unpaid invoices from projects on which a contractor had received payment from builders, this case has not yet reached that stage. Berkey should not obtain summary judgment in his favor based on his failure to fulfill the record-keeping duty described in *Gamboa*. Further, to the extent Berkey may be asserting the uncertainty regarding the ownership of the property may affect Bestway's ability to claim a lien against the properties, the Court notes the Colorado Supreme Court concluded "a trust fund claimant is not required to have a properly perfected lien, or still be able to perfect a lien to seek access to money held in trust under section 38-22-127." *Fowler & Peth, Inc. v. Regan (In re Regan)*, 151 P.3d 1281, 1289 (Colo. 2007).

addresses, but asserts the properties had unknown owners. There is no showing Bestway has a duty to track the owners of the properties for which concrete was delivered. Under the TFS, such tracking would be the duty of Tech Foundations. Whether such records exist is a question for trial. Second, the parties dispute whether, and how much, Tech Foundations was paid for the projects referred to in Motion A, another material fact. For these reasons, both Motion A and Amended Motion A must be denied.

## Motion B

Motion B states Oakwood Homes issued 12 joint checks to Tech Foundations and Bestway in the amount of $60,780.78. These checks were cashed, but Bestway alleges they were not endorsed by Bestway, only by Tech Foundations. Motion B concedes the joint checks were not signed by Bestway, but asserts Berkey and US Bank, where Tech Companies' bank account was kept, agreed to repay the $60,780.78. Therefore, US Bank returned the $60,780.78 to Bestway through Oakwood Homes' bank, Compass Bank. According to Berkey, Oakwood Homes then repaid the $60,780.78 to Bestway, with the result no trust funds were received by Berkey that could be subject to the TFS.

In its response to Motion B, Bestway acknowledges joint checks were written to Tech Foundations and Bestway in the amount of $60,780.78, and alleges US Bank allowed Tech Foundations to deposit the joint checks without the endorsement of Bestway. According to Bestway, Oakwood Homes and Bestway threatened to sue US Bank, and US Bank requested Bestway to execute fraud affidavits for the 12 joint checks. Bestway did so, and was paid $60,780.78 by US Bank.[6]

Bestway agrees it is not entitled to double recovery of the $60,780.78, and states it has in fact credited the $60780.78 against Bestway's calculation of damages. However, Bestway argues Bestway's ability to mitigate its damages by receiving $6,0780.78 from US Bank does not negate the underlying theft. Accordingly Bestway contends Berkey is still liable for treble damages under COLO. REV. STAT. § 18-4-401. Since theft under COLO. REV. STAT. § 18-4-401 requires a showing of specific intent, a question of material fact, Bestway maintains liability based on the joint checks cannot be determined on summary judgment. Further, Bestway asserts lack of intent cannot be shown by Berkey without sworn affidavits or other testimony.

In his Reply, Berkey points out that although his motions do not have affidavits, since he is pro se, every pleading he files and is signed by him is essentially an affidavit. He further inserts a form of affidavit following each section of his Reply. Regarding Bestway's response to Motion B, Berkey contends $60,780.78 from the joint checks was returned to Bestway, and argues no facts support the bringing of a criminal claim for treble damages.

---

[6] Bestway does not discuss the allegations the repayment was made through Oakwood Homes' bank.

The parties agree $60,780.78 was repaid to Bestway by US Bank.  Bestway agrees $60,780 has been credited against its claimed damages.  However, with respect to the damages asserted arising from the joint checks referred to in Motion B, a question of material fact remains as to whether Berkey would be liable for further sums under the Theft Statute.  This question involves intent, which is rarely appropriate for resolution by summary judgment.[7]  In this case, no evidence as to intent, or lack thereof, has been presented.  Accordingly, summary judgment cannot be granted on the claim arising from the joint checks and Motion B must be denied.

## Motion C

In Motion C, Berkey states Tech Foundations poured two concrete foundations for Oakwood Homes in late May 2008, and ceased doing business on May 31, 2008.  The addresses of the projects were 1892 Candleglow Street and 1897 Candleglow Street.  Bestway submitted invoices for these two projects in the amounts of $1,350.59 and $4,910.90, respectively.  However, Berkey asserts Tech Foundations did not have time to complete the necessary paperwork to receive payment for these projects, and thus never received any funds from Oakwood Homes which would constitute trust funds under the TFS.

In its response to Motion C, Bestway argues Berkey has misconstrued Bestway's burden of proof.  Bestway states it does not have to prove its claim prior to the trial.  In addition, Bestway contends it delivered concrete to the two subject projects on May 29, 2008 and June 2, 2008, two days before and two days after Tech Foundations ceased operations, indicating Tech Foundations ordered concrete from Bestway at a time when it knew it was about to cease operations or had already ceased operations, creating a strong inference that Tech Foundations had no intention to pay for the concrete.  Therefore, Bestway states it may assert additional claims based on theft.

As to Bestway's response to Motion C, Berkey states the fact Bestway may put on facts showing violation of the TFS at trial does not adequately address the assertion Tech Foundations did not receive trust funds in payment for the projects addressed in Motion C.  Berkey alleges Bestway has had the opportunity to obtain additional discovery regarding the two projects specified in Motion C, but has not secured evidence to support its claims.

The Court recognizes the affidavit of Frank Walker, vice president of Oakwood Homes, attached as an exhibit both to Bestway's initial motion for summary judgment and to Berkey's Motion D, does not list the two foundations specified in Motion C.  The Court also notes

---

[7] See *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998) ("Summary judgment is not ordinarily appropriate for settling issues of intent or motivation.") (citing *Setliff v. Mem'l Hosp. of Sheridan County*, 850 F.2d 1384, 1394 n. 12 (10th Cir. 1988)).  *See also Southwest Financial Services of Las Cruces, Inc. v. Tarrango (In re Tarrango)*, 424 B.R. 479, 490 (Bankr. D. N.M. 2010) (citing *Prochaska v. Marcoux*, 632 F.2d 848, 851 (10th Cir. 1980; *Compton v Herrman (In re Herrman)*, 355 B.R. 287 (Bankr. D. Kan. 2006); *Adams County Dept. of Social Services v. Sutherland-Minor (In re Sutherland-Minor)*, 345 B.R. 348, 356 (Bankr. D. Colo. 2006)).

Oakwood's records do not necessarily offer proof of what was paid or received by Tech Foundations or Bestway with respect to the Motion C properties.  No documentation was offered by either Bestway or Berkey to support allegations as to these properties.  Therefore, pursuant to FED. R. CIV. P. 56, the Court must construe the allegations of the Complaint, that Tech Foundations received funds it failed to pay to Bestway in violation of the TFS, resulting in damages in an amount to be proved at trial, in the light most favorable to Bestway.  Accordingly, a question of fact exists as to whether funds were received pursuant to the TFS with respect to the properties identified in Motion C, which question must be resolved at trial, and Motion C must be denied.

**<u>Motion D</u>**

This Motion asserts Bestway has been complicit in the handling of trust funds paid to Tech Foundations with respect to 11 joint checks in the total amount of $411,620.55, concerning 12 properties which have $61,005.24 in unpaid Bestway invoices.  Berkey states the affidavit of Bestway president Frank Walker and e-mails exchanged between Berkey and Bestway indicate Bestway agreed to Berkey's use of funds from these joint checks, so Bestway cannot now assert a violation of the TFS.

Bestway's response to Motion D asserts Berkey has not shown the absence of a genuine issue of material fact.  Bestway disputes the contention Bestway's mere signature on checks on which Tech Foundations and Bestway were joint payees establishes Bestway was complicit in the disposition of funds and thereby deprives it of a TFS claim.  Further, Bestway argues Motion D contains factual allegations for which Bestway has not conducted cross-examination, and points out the affidavit of Bestway's president, Gene Wagner, attached to Bestway's original Motion for Summary Judgment, indicates Bestway never entered into any kind of financing agreement with Tech Foundations.  Moreover, Bestway contends it never took control of Tech Foundations' collection process with developers through mechanic's liens.  Accordingly, Bestway argues there is no evidence of "complicity," of "participation in disposition of funds," or of "consent" with regard to disposition of trust funds.  Bestway states the case law cited by Berkey does not support the proposition that endorsement by a joint payee on a check establishes the requisite complicity, agreement or consent to defeat the TFS claim.

Regarding Bestway's response to Motion D, Berkey argues a signed joint check constitutes conclusive evidence Bestway was complicit in Tech Foundations' use of funds from the joint check.  Specifically, Berkey notes both Bestway and Tech Foundations had control over the funds from such a check

The affidavit of Frank Walker, vice president of Oakwood Homes, LLC, attached as Exhibit C to Motion D, indicates Oakwood issued joint checks to Bestway and Tech Foundations for payment on certain projects.  The affidavit does not indicate the terms or understandings of any joint check agreement as between Tech Foundations and Bestway.  In addition, the emails

attached to Motion D, between Gene Wagner and Berkey, reflect propositions made with respect to Tech Foundations' payments to Bestway, but do not provide evidence of an actual agreement between Tech Foundations and Bestway. Therefore, the parties' agreement, if any, as to the effect of the issuance and negotiation of the joint checks from Oakwood Homes, remains a question of fact for trial, and Motion D must be denied.

## Motion E

In Motion E, Berkey states Bestway should not be permitted to take control of trust funds and file liens and negotiate with builders to be paid on its invoices, then release its liens and seek payment on the same invoices from Berkey. Specifically, with respect to $195,657.96 owed by Tech Foundations to Bestway on projects for Classic Residences, and with respect to $122,649.10 owed by Tech Foundations to Bestway projects for Oakwood Homes, Berkey alleges the following took place.

First, Bestway demanded payment from Tech Foundations, but Tech Foundations ceased doing business approximately May 31, 2008, and did not pay Bestway. Bestway then filed liens or threatened to file liens, and the builders negotiated with Bestway for payment of Bestway's invoices and the release of Bestway's liens. Berkey recognizes Tech Foundations still owes Bestway any difference between the negotiated amounts paid by the builders to Bestway, but does not believe this liability falls under the TFS because Tech Foundations did not exercise control over the negotiations nor the funds from the builder to which Tech Foundation had claims. Berkey contends Bestway's release of lien rights after Bestway received payments from the two builders prevents Bestway now from claiming lien rights and damages under the TFS.

Bestway's response to Motion E disputes the assertion that Bestway's filing of liens and subsequent settlement with property owners or builders results in Tech Foundations being relieved of liability. Bestway argues such a position conflicts with principles of mitigation of damages, and with relevant case law. In addition, Bestway contends remedies available to unpaid suppliers are not mutually exclusive. Bestway acknowledges it is not entitled to a double recovery, but states it has credited any funds paid by the builders against the damages it claims. Berkey presented no additional allegations or argument in his Reply with respect to Bestway's response to Motion E.

The Court agrees Bestway may assert lien rights or seek payment from the builder for amounts it was not paid without waiving its claim against Tech Foundations or Berkey under the TFS, so long as Bestway does not attempt to obtain a double recovery. The Court agrees with the findings of the Hon. Elizabeth E. Brown of this Court, who stated:

> [T]he Court finds the better view to be that collections or recoveries made from another source, either before or after a dischargeability trial, should be credited to the entire indebtedness. . . . .In this case, the amount the Plaintiffs collected from the

builders directly. . . was not a recovery of the trust funds improperly disbursed, but represented additional payment for work performed on the projects. Thus, it is logical to apply the collections to the entire debt owed to the Plaintiffs. . . .This result comports with the purpose of the trust fund statute. The statute imposes liability whenever funds are received in trust but not disbursed in accordance with the trust's directives. Liability should then be tied to the amount of the improper disbursement, and only reduced by recovery of the improper disbursements or the reduction of the overall claim.[8]

Further, in Colorado, subcontractors, laborers and material suppliers have three alternatives to satisfy legitimate claims for compensation: (1) claims may be made pursuant to the Colorado General Mechanics' Lien Statute (COLO. REV. STAT. § 38-22-101, *et seq.*); (2) claims may be made against a trust fund created by the TFS; or (3) a contractor may post a bond and a subcontractor, laborer, or material supplier can either pursue its lien rights or claim against the bond.[9]  There has been no showing by Berkey that a claimant must choose only one of the alternatives.  Accordingly, the Court cannot find Berkey is entitled to judgment as a matter of law and Motion E must be denied.

## CONCLUSION

For the above reasons,

IT IS ORDERED Berkey's Dispositive Motions A, Amended A, B, C, D, and E are hereby DENIED.

Dated August 18, 2011

BY THE COURT:

Michael E. Romero
U.S. Bankruptcy Judge

---

[8]  *Gamboa, supra*, at 793.

[9]  *Regan, supra*, at 1284-85.